IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL W. BLAKE and | : | CIVIL ACTION |
| JOAN K. BLAKE, his wife | : | NO. 02-CV-04774 |
| and | : | |
| GEORGE NAYLOR and | : | CLASS ACTION |
| DIANE C. NAYLOR, his wife, | : | |
| | : | JURY TRIAL DEMANDED |
| on behalf of themselves and all | : | |
| similarly situated | : | |
| | : | |
| v. | : | |
| | : | |
| LOGS FINANCIAL SERVICES, INC. | : | |
| SHAPIRO & KREISMAN | : | |
| | : | |
| Defendants. | : | |

## **O R D E R**

AND NOW, this ___ day of _____, 2003, upon consideration of the Motion of Defendants for Summary Judgment, and the attached Declaration of Joanne Thoma-Ball, and plaintiff's response thereto, it is ORDERED that the Motion is GRANTED, and that JUDGMENT is hereby entered in favor of defendants and against plaintiffs.

BY THE COURT:

_____
Kauffman, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL W. BLAKE and | : | CIVIL ACTION |
| JOAN K. BLAKE, his wife | : | NO. 02-CV-04774 |
| and | : | |
| GEORGE NAYLOR and | : | CLASS ACTION |
| DIANE C. NAYLOR, his wife, | : | |
| | : | JURY TRIAL DEMANDED |
| on behalf of themselves and all | : | |
| similarly situated | : | |
| | : | |
| v. | : | |
| | : | |
| LOGS FINANCIAL SERVICES, INC. | : | |
| SHAPIRO & KREISMAN | : | |
| | : | |
| Defendants. | : | |

## MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT

Defendants hereby move, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, for the entry of summary judgment in their favor and against plaintiffs. In support of this motion, defendants submit the accompanying Memorandum of Law and Declaration of Joanne Thoma-Ball.

_____
Darryl J. May
Jody B. Greenberg
BALLARD SPAHR ANDREWS
   & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8103

Attorney for Defendants

Dated: April 9, 2003

PHL_A #1697540 v1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL W. BLAKE and | : | CIVIL ACTION |
| JOAN K. BLAKE, his wife | : | NO. 02-CV-04774 |
| and | : | |
| GEORGE NAYLOR and | : | CLASS ACTION |
| DIANE C. NAYLOR, his wife, | : | |
| | : | JURY TRIAL DEMANDED |
| on behalf of themselves and all | : | |
| similarly situated | : | |
| | : | |
| v. | : | |
| | : | |
| LOGS FINANCIAL SERVICES, INC. | : | |
| SHAPIRO & KREISMAN | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, LOGS Financial Services, Inc. ("LOGS") and Shapiro & Kreisman ("S&K"), respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I.   INTRODUCTION

Plaintiffs, Michael W. Blake and Joan K. Blake ("Blakes") and George Naylor and Diane C. Naylor ("Naylors"), are homeowners and borrowers on their respective mortgage loans. Plaintiffs' mortgage loans are serviced by Washington Mutual Bank, NA ("WaMu").

Defendant LOGS is an outsourcing business which assists mortgage servicers, including WaMu, in servicing their defaulted residential mortgage loans.

Pursuant to contract, LOGS manages the Foreclosure and Bankruptcy Departments of WaMu. LOGS coordinates and facilitates the collection of obligations owed to mortgage servicers, but it does not itself engage in collection activities.

S&K is a law firm based in King of Prussia, Pennsylvania, and is primarily engaged in the representation of mortgage lenders and servicers in collections, foreclosures, and bankruptcy matters.

According to the complaint, WaMu charged plaintiffs late fees on their overdue mortgage payments prior to the expiration of the "grace period" allotted to them by the terms of their respective mortgages. Specifically, plaintiffs allege that WaMu assesses late fees on the 16th day of the month, while the fees are not actually assessable until the 17th day. (Compl. ¶ 15.) Plaintiffs thus allege that defendants, by attempting to collect these late fees, have violated the Fair Debt Collection Practices Act. Plaintiffs also assert that the attempted collection of these late fees constitutes an unfair trade practice.

Defendants do not agree that WaMu's alleged practice of imposing late charges on the 16th day of the month is improper under their Notes, but that contractual question is simply irrelevant to this litigation because plaintiffs lack standing to pursue their claims. For those months for which late charges were assessed, plaintiffs' payments were made *after* the 16th day of the month. Thus, what this lawsuit really seeks is an advisory opinion on whether the 16th or the 17th day is the earliest day of the month on which fees may be assessed. The Constitution prohibits such an abstract inquiry.

II. **STATEMENT OF FACTS**

The Blakes, mortgagors on a loan serviced by WaMu, executed their Note and Mortgage in June of 1996. The Note provides that payments are due on the first of

2

the month, beginning on August 1, 1996 and ending on July 1, 2026. The Note also provides the following: "If the Note Holder has not received the full amount of any monthly payments by the end of fifteen calendar days after the date it is due, [Blakes] will pay a late charge to the Note Holder. I will pay this late charge promptly but only once on each late payment." (Compl., Exh. A, at ¶ 6(A).)

The Naylors, also mortgagors on a loan serviced by WaMu, executed their Note and Mortgage in May of 1991. Like the Blake Note, payments are due on the first of the month. The Naylor Note also contains a similar provision regarding late fees: "If Lender has not received the full monthly payment required by the Security Instrument, as described in paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four per cent (4.0000%) of the overdue amount of each payment." (Compl., Exh. B, at ¶ 6(A).)

Both Notes, therefore, provide Plaintiffs with a "grace period" before late charges are assessed. The gravamen of plaintiffs' lawsuit is that WaMu assesses late charges on the 16th day of the month, but that such practice is improper because, in light of the grace period, late charges should not be assessed until the 17th day. (Compl., ¶ 15.) Plaintiffs claim that defendants in this action[1] acted improperly in trying to collect these charges.[2]

Plaintiffs have not been impacted by this alleged practice. Beginning in 1999, the Blakes' payments were frequently late. *See* "Blake Loan History," which is

---

[1]   A related case is pending against WaMu. *Blake, et al. v. Washington Mutual Bank, FA,* No. 02-4773 (E.D. Pa.).

[2]   Defendant LOGS does not engage in collections activity, but since the plaintiffs lack standing, that issue is not being presented to the Court at this time.

3

part of the Declaration of Joanne Thoma-Ball, attached hereto as Exhibit A.  Although the degree to which these payments were late varied considerably over time, the earliest payment for which a late fee was assessed was for the August 1999 monthly payment, which was received on August 19, 1999.  *Id*.

The Naylors' late payments began in 1992.[3]  *See* "Naylor Loan History," attached to the Thoma-Ball Declaration.  The timeliness of the Naylors' loan payments, like the Blakes', varied considerably.  *Id.*  Again, however, all payments on which late fees were assessed by WaMu were made after the 16th day of the month.

### III.   ARGUMENT

#### A.   Standard For Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party moving for summary judgment has the initial burden of showing the basis for the motion, but once met, the burden shifts to the nonmoving party to show that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 417 U.S. 317, 324 (1986).  Summary judgment must be granted if no reasonable trier of fact could find for the nonmoving party.  *Bogle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir.

---

[3]   Although, for the sake of completeness, the Thoma-Ball Declaration reviews the Naylors' late payment history over its ten-year-plus history, this review (as well as its review of the Blake Loan History) is without prejudice to defendants' assertion of the applicable statutes of limitations at the appropriate time, should that ever be necessary in light of plaintiffs' lack of standing.

4

1998). Here, there can be factual dispute that the factual predicate for a justiciable lawsuit is lacking.

> **B.     Plaintiffs Lack Standing Because Plaintiffs' Late Payments Were Not Made Prior to the Expiration of the "Grace Period," As Plaintiffs Calculate It**

Consistent with the notion of the separation of powers on which our federal government is based, Article III confines the jurisdiction of the federal courts to "actual 'cases' and 'controversies.'" As a result, "'[t]he existence of a case and [or] controversy is a prerequisite to all federal actions.'" *The Joint Stock Society v. UDV North America, Inc.* 266 F.3d 164, 174 (3rd Cir. 2001)(*citing Philadelphia Fed'n of Teachers v. Ridge,* 150 F.3d 319, 322 (3rd Cir. 1998)).

The case-or-controversy requirement is manifested in several doctrines, the "most important" of which is that a litigant must have standing to invoke the power of a federal court. *Id*. The Third Circuit has recently taken pains to re-emphasize the importance of the standing doctrine. *Storino v. Borough of Point Pleasant Beach, New Jersey*, 322 F.3d 293, 300 (3d Cir. 2003) (section II(D) of opinion is entitled "The Importance of the Standing Doctrine").

The "irreducible constitutional minimum of standing contains three elements," and "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The three elements are: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal nexus between that injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable judicial decision. *Joint Stock Society,* 266 F.3d at 175 (citing *Lujan*, 504 U.S. at 560-61) (no standing where the alleged injury was not traceable to the challenged actions). The first element, actual injury, is defined as "an

5

invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *AT&T Communications of New Jersey v. Verizon New Jersey, Inc.,* 270 F.3d 162 (3d Cir. 2001). Together, the standing "requirements ensure that plaintiffs have a 'personal stake' or 'interest' in the outcome of the proceedings, 'sufficient to warrant . . . [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on . . . their behalf.'" *Id.* (citing *Wheeler v. Travelers Ins. Co.,* 22 F.3d 534, 537-38 (3rd Cir. 1994).

The filing of a matter as a putative class action in no way relaxes the named plaintiff's standing requirements. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) ("Until the putative class is certified, the action is one between the [named plaintiffs] and the defendants. Accordingly, the First Amended Complaint must be evaluated as to these particular plaintiffs."). Thus, for example, in *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 561 (3d Cir. 2001), the dismissal of putative class ADA and Rehabilitation Act claims arising out of a NCAA eligibility rule was affirmed because the plaintiff could not show that she suffered injury by reason of the challenged rule.

The standing doctrine was well articulated recently in the "consumer class action" context when the Fifth Circuit ordered the dismissal of an action seeking damages for allegedly wrongful representations made in connection with the sales of a drug:

> "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party

6

> seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *accord Defenders of Wildlife*, 504 U.S. at 563, 112 S.Ct. 2130. It is not enough that Wyeth may have violated a legal duty owed to some other patients; the plaintiffs must show that Wyeth violated a legal duty owed to them. "What courts require. . . is that the injury be personal." [Citation omitted].

*Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 320 (5th Cir. 2002). *See also Bowen v. First Family Fin. Serv., Inc.*, 233 F.3d 1331, 1339 n.6 (11th Cir. 2000) ("a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, 'even if the persons described in the class definition would have standing themselves to sue.'" (citations omitted); *Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 667-68 (M.D. Fla. 1996) (because plaintiffs had not paid the $60.00 payoff fee of which they complained, "[t]his Court agrees with Defendants that Plaintiffs have suffered no actual personal injury, and therefore lack standing to bring this action.").

Applying constitutional standing requirements to the present case mandates dismissal. Simply stated, plaintiffs lack standing because they were assessed late charges only on payments made after the expiration of the "grace period" as defined by them, so they suffered no "injury in fact" that has a causal nexus to the conduct complained of, and which would be redressed by a favorable judicial decision.

The gravamen of the complaint is straightforward: plaintiffs claim that WaMu calculates the period as permitting late charges to be assessed on the 16th day of the month, whereas plaintiffs calculate that period as extending *through* the 16th day, so that charges can only be assessed beginning on the 17th day of the month. (Compl. ¶ 15.) Thus, the factual inquiry for whether plaintiffs have standing is equally straightforward:

7

did WaMu assess late fees for payment received from plaintiffs on or before the 16th day of the month on which the payment was due.  The answer is "no."

First, the Complaint makes only conclusory allegations of injury.  (*See* Compl. ¶¶ 21(b)(6) (Blakes), 21(c) (mis-labelled as ("b"))(6) (Naylors)).  It does not point to any specific instances in which a late charge was assessed before the 17th day of the month.  The Complaint does attach some exhibits (D-1, D-2, D-3) relating to the Blakes, but these do not show the imposition of late charges for payments made within the grace period, nor does the Complaint purport to explain otherwise.

Second, defendants attach to this Motion and Memorandum the Declaration of Joanne Thoma-Ball, the manager of LOGS' foreclosure department, who has reviewed the loan histories of plaintiffs (as provided by WaMu) through the time of the filing of the Complaint.  Ms. Thoma-Ball certifies that the loan histories attached to the Declaration accurately reflect the date each monthly payment was received and whether a late fee was assessed.  A review of these payment histories show that, for each of the months in which a late charge was assessed, the payment was received later than the 16th day of the month. (Thoma-Ball Decl., ¶¶ 4, 6.)  Indeed, of the months for which a late fee was assessed on the Blakes, the earliest payment date was the 19th of the month. *See* payment for month of August, 1999.  For the Naylors, the earliest such payment was made on the 22nd of the month.  *See* payment for month of April, 1996. (Defendants note that in many instances it appears at first glance that payment was made by the 16th of the month, but that, on closer inspection, one sees that the payment was actually for the *prior* month, or for a month prior to that, or even for a *prior year*.)

8

Accordingly, while plaintiffs complain about a policy that may or may not exist in the abstract, and may or may not be based on the correct interpretation of the grace period provision of their Notes, it cannot be genuinely maintained that plaintiffs themselves suffered a direct, concrete injury from the alleged practice. They have no standing, and summary judgment must be entered in favor of defendants.

**IV.     CONCLUSION**

For the foregoing reasons, summary judgment should be entered against plaintiffs and in favor of defendants LOGS Financial Services, Inc. and Shapiro & Kreisman.

 

_____
Darryl J. May
Jody B. Greenberg
BALLARD SPAHR ANDREWS
   & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
215-864-8103

Attorney for Defendants

Dated:   April 9, 2003

## **CERTIFICATE OF SERVICE**

      I, Darryl J. May, Esquire, do hereby certify that I caused a copy of the foregoing Motion of Defendants for Summary Judgment and Memorandum of Law in support thereof to be served on April 9, 2003, by first class mail, postage prepaid, and by telecopy, upon the following counsel of record:

                Stuart A. Eisenberg, Esquire
                Carol B. McCullough
                McCullough & Eisenberg, P.C.
                530 West Street, Suite 201
                Warminster, PA 18974

                _____
                Darryl J. May